UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

BERNARD FRANCIS SCHULTZ )
ELIZABETH MARY SABATINE )
        Plaintiffs, )
v. ) Civ. No. 1:07-CV-12
UNITED STATES OF AMERICA, ) *Judge Edgar*
ALBERTO GONZALES, ATTORNEY )
GENERAL OF THE UNITED STATES )
OF AMERICA and, RICHARD )
CLIPPARD, UNITED STATES )
TRUSTEE REGION 8 )
        Defendants. )

**MEMORANDUM**

Plaintiffs are debtors residing in Hamilton County, Tennessee. They seek a declaratory judgment that certain "means testing" provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") violate the Bankruptcy Clause of the United States Constitution, which provides that "Congress shall have the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." This court concludes that BAPCPA is not contrary to the Constitution, and accordingly, Congress acted within its constitutional power in enacting it.

**I**

Procedurally this case is now before the court on cross motions for summary judgment filed under Fed. R. Civ. P. 56. [Court Doc. Nos. 6, 14]. The court has heard oral arguments on these motions. Summary judgment is appropriate where no genuine issue of material fact exists and the

1

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp.*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907.

**II**

Plaintiffs have filed a Chapter 13 case in the Bankruptcy Court for the Eastern District of Tennessee.[1] Because of the "means testing" provisions contained in BAPCPA, plaintiffs allege that the bankruptcy laws have treated them differently from certain debtors residing elsewhere. Under BAPCPA the means test operates as a screening device utilizing income and expense calculations for debtors to determine eligibility for bankruptcy relief. H. R. Rep. No. 109-31 to accompany S. 256, 109th Cong. 1st Sess. (2005). A debtor's current monthly income as determined under 11 U.S.C.

---

[1] Defendants do not raise a substantive challenge to the plaintiffs' standing to bring this case.

2

§ 101 (10A) is compared with the median family income as determined by 11 U.S.C. § 101 (39A) for the State of Tennessee. Median incomes are generated by the Bureau of the Census and vary from state to state. In addition, a debtor's monthly expenses are measured against expense figures produced by the Internal Revenue Service. The expense figures also vary from state to state and also from region to region within a state.

Plaintiffs assert that they have received less favorable treatment under the bankruptcy laws than debtors residing in states with higher median incomes. They specifically point to debtors in Connecticut, Hawaii, Maryland, Massachusetts, New Hampshire, and New Jersey. Since plaintiffs' current monthly income exceeded the median income figure for Tennessee, they were compelled to file under Chapter 13 of the Bankruptcy Code rather than Chapter 7. If they had not done so, their case would have been subject to a motion to dismiss by the U.S. Trustee for a "presumption of abuse."[2] This would not have happened in the other states mentioned because in those states the plaintiffs' current monthly income would not have exceeded the median income in those states.

Plaintiffs also claim that the expense figures could have adversely affected their ability to file under Chapter 7. Specifically they contend that the Internal Revenue Service expense figures for Hamilton County, Tennessee, required them to commit their disposable income in their Chapter 13 plan for a period of five years, rather than three years, thereby causing them to pay more money than they would have had to pay creditors had they resided in locations with different expense figures. Plaintiffs also assert that these geographically varying expense figures affect the amount

---

[2]The defendants observe that the plaintiffs' case may or may not have been actually dismissed if they had filed under Chapter 7. However, there does not seem to be any dispute that because of the level of the plaintiffs' income, a motion to dismiss by the U.S. Trustee would have been warranted.

of the payments they must make under their Chapter 13 plan, making them larger or smaller than those of debtors elsewhere. The statutes involved in the above means test calculations are 11 U.S.C. § § 704(b), 707(b)(2),1325(b)(3) and 1325(b)(4).

**III**

Among the powers granted to Congress in Article I, Section 8 of the United States Constitution is the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." This is the so-called Bankruptcy Clause. Plaintiffs contend that the means test implemented by BAPCPA violates the constitutional requirement that bankruptcy laws be uniform throughout the United States.

This court starts with the proposition that there is a presumption that bankruptcy laws are constitutional. Since they regulate economic activity and not, for example, protected speech, they are subject to a "quite lenient test for constitutional sufficiency." *Stuart v. U.S. Trustee (In re Stewart)*, 175 F.3d 796, 811 (10th Cir. 1999); *see also United States v. Kras*, 409 U.S. 434, 446 (1973). The issue here is very simple and straightforward. Is BAPCPA a uniform law on the subject of bankruptcy?

The Bankruptcy Clause's broad congressional authorization of uniform bankruptcy law is not further defined or mentioned in the Constitution itself. However, on several occasions the Supreme Court has given substance to the meaning of the uniformity requirement. The Bankruptcy Act of 1898 allowed exemptions for debtors prescribed by state law, as does today's statute. These exemptions vary from state to state. In *Hanover National Bank v. Moyses,* 186 U.S. 181 (1902), the Supreme Court held that the bankruptcy law was nevertheless "in the constitutional sense, uniform throughout the United States." *Id.* at 189. The Court explained that "[t]he general operation of the law is uniform although it may result in certain particulars differently in different states." *Id.* This

4

ruling was followed by Supreme Court holdings that the 1898 Bankruptcy Act's incorporation of state fraudulent conveyance statutes did not violate the uniformity principle even though the operation of those statutes varied from state to state. *Stellwagen v. Clum*, 245 U.S. 605 (1918). Later the Supreme Court held that in the absence of contrary federal bankruptcy law, state tort and contract law determine the validity of creditors' claims. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946). This line of cases makes it clear that the uniformity requirement does not proscribe different results in different states because of state law variations.

Plaintiff argues, however, that the BAPCPA amendments are different because they create variations in different states based on federal, not state, law. Plaintiffs are indeed factually correct to the extent that the means test is a federal statutory creation using national statistics that vary by state, and even within a state, to determine the scope of available bankruptcy relief. However, this argument is not persuasive for several reasons. First, plaintiffs' federal vs. state distinction does not distinguish *Hanover Bank v. Moyses* and its progeny in a meaningful way. Plaintiffs have supplied no principled reason for concluding that variations resulting from federal statistics create unconstitutional non-uniformity, whereas variations resulting from state law do not. Secondly, the exemptions that produce different results in different states are also the result of federal legislation incorporating those exemptions into the bankruptcy law. Finally, the cases in which uniformity issues have been raised in other contexts do not support the plaintiffs. In fact, the Supreme Court has said the "[t]he uniformity requirement of the Bankruptcy Clause is not an Equal Protection Clause for bankrupts." *Railway Labor Executives Ass'n v. Gibbons,* 455 U.S. 457, 471 n.11 (1982).

The Supreme Court has upheld congressional legislation dealing with railroad reorganization in a statutorily defined region. *Blanchette v. Conn. Gen. Ins. Corp.*, 419 U.S. 457, 102 (1974). In so doing, the Court said that "[t]he uniformity provision does not deny Congress power to take into

account differences that exist in different parts of the country." *Id.* at 159. Indeed, *Gibbons*, *supra*, is the only case wherein congressional legislation has been found in violation of the uniformity requirement. *Gibbons*, however, provides plaintiffs little comfort, since the legislation at issue applied to only one regional bankrupt railroad, whereas BAPCPA applies nationwide. The Supreme Court specifically recognized that the holding in *Gibbons* "does not impair Congress' ability under the Bankruptcy Clause to define classes of debtors and to structure relief accordingly." 455 U.S. at 473.

This is precisely what Congress has done in BAPCPA. The means test makes some bankruptcy relief contingent upon the income of debtors and upon how their income compares to the median family income in their state of domicile. Disposable income might vary from place to place, but it is based on uniformly calculated national statistics. The variations in the results produced by these statistics are of no constitutional consequence. BAPCPA, with its means test, is a uniform law on the subject of bankruptcies. Congress had the power to enact it under Article I, Section 8, of the Constitution.

## IV.

For the reasons stated *supra*, Plaintiffs' motion for summary judgment will be **DENIED**. Defendants' motion for summary judgment will be **GRANTED**. Plaintiffs' claims will be **DISMISSED WITH PREJUDICE**.

A judgment will enter.

                               */s/ R. Allan Edgar*
                               R. ALLAN EDGAR
                               UNITED STATES DISTRICT JUDGE